IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIS C. MCALLISTER,<br><br>Plaintiff,<br><br>vs.<br><br>HERTZ GLOBAL HOLDINGS INC., DTG OPERATIONS, INC.(d/b/a, a/k/a, DOLLAR RENT A CAR, THRIFTY CAR RENTAL, DOLLAR-THRIFTY AUTOMOTIVE GROUP *and* THE HERTZ CORPORATION). SNELLING SERVICES, LLC(d/b/a, a/k/a, SNELLING STAFFING, and SNELLING EMPLOYMENT, LLC). GEORGE CHOE (an individual), and LISA LIEN (an individual).<br><br>Defendants. | ) | CV 17-00146-LEK-WRP<br><br>Honolulu, Hawaii<br>October 9, 2019<br><br>CONFERENCE REGARDING MOTION TO APPOINT ARBITRATOR |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WES REBER PORTER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff (By telephone): | WILLIS C. MCALLISTER<br>1111 Piikoi Street<br>Honolulu, Hawaii 96814<br>*Pro Se* |
| For the Defendants Hertz Global Holdings, Inc., DTG Operations, Inc., and George Choe: | SARAH O. WANG<br>Marr Jones & Wang<br>1003 Bishop Street 1500<br>Honolulu, Hawaii 96813 |

APPEARANCES CONTINUED:

| | |
|---|---|
| For the Defendants Snelling Services, LLC, and Lisa Lien: | APRIL LURIA<br>Roeca Luria Shin LLP<br>Davies Pacific Center<br>841 Bishop Street, Suite 900<br>Honolulu, Hawaii 96813 |
| Official Court Reporter/ Transcriber: | Debra Read, RDR<br>United States District Court<br>300 Ala Moana Boulevard<br>Honolulu, Hawaii 96850<br>readit3949@gmail.com |

Proceedings recorded by electronic sound recording; transcript produced with computer-aided transcription (CAT).

WEDNESDAY, OCTOBER 9, 2019 9:02 A.M.

THE COURTROOM MANAGER: Civil 17-0016[*sic*], Willis McAllister versus Hertz Global Holdings, Inc., et al.

This case is called for a Conference Regarding Motion to Appoint Arbitrator.

Appearances, please.

MS. LURIA: Good morning, Your Honor.

April Luria. I'm appearing on behalf of the Snelling defendants and Lisa Lien.

THE COURT: Good morning.

MS. WANG: Good morning, Your Honor.

Sarah Wang appearing on behalf of DTG Operations, Inc. and George Choe.

THE COURT: Good morning.

I think we're going to try to call plaintiff on the phone now. You guys can be seated.

MR. MCALLISTER: Hello?

THE COURTROOM MANAGER: Mr. McAllister?

MR. MCALLISTER: Yes.

THE COURTROOM MANAGER: This is federal court with Judge Porter. I'm going to put you on our overhead speaker in the courtroom. Judge Porter is here and opposing counsel. Okay?

MR. MCALLISTER: Thank you.

THE COURTROOM MANAGER: Thank you.

Mr. McAllister, can you hear me?

MR. MCALLISTER: Yes.

THE COURTROOM MANAGER: Can you state your name, sir?

MR. MCALLISTER: This is Willis McAllister, plaintiff, case No. 17-1 -- 00146.

THE COURTROOM MANAGER: Sir, can you -- are we on speakerphone? It's harder to talk when we're on speaker. Can you say your name again, sir?

MR. MCALLISTER: Yeah. This is -- here, let me -- let me change the speaker. Hold on.

THE COURTROOM MANAGER: No, you actually sound good, sir.

MR. MCALLISTER: Okay. Can you hear me now?

THE COURTROOM MANAGER: Yes. Thank you so much.

MR. MCALLISTER: Yeah. Again, this is Willis McAllister, civil case No. 17-00146, McAllister versus Hertz.

THE COURT: Mr. McAllister, this is Judge Porter here. So I can hear you fine. If at any point during this, because you're on the phone, if you can't hear me or can't hear one of the other speakers in the conference, can you just let us know and we'll fix it rather than continue talking? Okay?

MR. MCALLISTER: Thank you.

THE COURT: I think what I'd like -- I think you also, Mr. McAllister, I want to make sure you -- we moved this

down. I'm a United States Magistrate Judge, so I hold conferences and hearings in different places. Oftentimes I will hold a conference in chambers which does not have any type of recording or transcription ability, or I can hold conferences as we're doing now -- whether or not folks are by phone -- I can do it in the courtroom which has the capabilities to record. So that's what we're doing. We have an audio system here that records hearings or conferences that take place in the courtroom.

So as I understood some of the communications with my courtroom manager, we moved this matter to the courtroom so it has the ability to record. Now, it's up to you if for some reason after this conference you would like a transcript, that would be for you to arrange getting the recording transcribed, filing the proper motions.

But I just wanted to let you know based on that communication that that made its way to me and we made some adjustments accordingly.

Does that make sense?

MR. MCALLISTER: Well, let me ask you this --

THE COURT: Well, you're going to answer my question first, please. Does that make sense what I'm saying to you --

MR. MCALLISTER: No, it doesn't. It doesn't.

THE COURT: Okay. So -- so let me -- let me try to go one step further in explaining it. And that is because of

the type of judge I am and because of the chambers and courtroom that I have, we don't have assigned court reporters on this floor and we don't have that capability in this courthouse. So the -- even when folks have the most sophisticated civil matters that you could possibly imagine where they want everything transcribed, this is the mechanism by which we do it. We record it on the overhead and then you would take the proper channels to request transcription thereafter.

So there is no other person in the room performing the -- the function that you would normally see on TV and the movies of transcribing, like the court reporter. We don't have that person here. We have the recording equipment.

Does that offer some clarification?

MR. MCALLISTER: Yeah, I understand your procedures. Thank you.

THE COURT: Okay. So this matter -- I'm going to probably need a little bit of help from the parties as to my role here because it's been referred to me for a status conference. I did review the docket and I reviewed Mr. McAllister's filing.

So I certainly understand that there was an arbitration clause that was enforced, and then we went to arbitration.

I don't know exactly what happened at arbitration, although I have some pretty good guesses, and we find ourselves

at this point without arbitrators. And so at some level the motion that's brought before the district court above to appoint a new arbitrator probably makes sense and is appropriate.

But I'd like to hear from defense first, if anyone can offer me anything as to what are the next steps or what do we hope to accomplish in the status conference before me today?

MS. LURIA: Your Honor, if I may?

THE COURT: Yeah, please.

MS. LURIA: This is April Luria, for Mr. McAllister.

Back in July after the Dispute Prevention Resolution withdrew from arbitration, as did the arbitrator, I had made some email inquiries of the parties to try to have a telephone conference so we could discuss where to proceed.

That did not occur and there were no real responses in terms of scheduling by the plaintiff, and we now have his motion to compel arbitration.

Quite candidly, one of the subjects that I wanted to raise during that conference was perhaps a stipulation of the parties to have the case returned to the federal court. The arbitration clause and purpose is to hopefully allow for a less expensive and more efficient means of resolving disputes. That was not occurring when we were before the arbitration proceedings with DPR. The costs were high in part because the plaintiff represented he was unable to pay all but $25 towards

mediation costs. This was at the initial scheduling in working this up.

The defendants agreed at that time to share his cost of the arbitration; however, as we went on, within just the next three months there were numerous motions. There -- the costs continued to build. There were requests for private conference rooms, for court reporters, for videography of depositions, all which the defendants had to bear.

I've never -- I'll be candid. I've never used any arbitration administrators other than Dispute Prevention Resolution. I did make some inquiry of AAA, and those costs are going to be even more than what we were going to experience with DPR.

My concern is that unless we are back in the court proceeding with the court rules, the security that's available here at federal court, that this may be protracted and we will not see final resolution of this case for a long time and at an exorbitant cost to the defendants which, frankly, my clients are not willing to incur at this time.

THE COURT: And so is it the case, as I think represented in the motion -- and when I refer to the motion, I'm talking about Mr. McAllister's motion to appoint an arbitrator, Docket No. 63 -- that not only did the two folks, Keith Hunter and Stefan Reinke, not want to be involved any more, but that it does impact all of DPR?

MS. LURIA: I'm not quite sure how DPR works with respect to their panel of arbitrators, but to the extent those arbitrators would need to utilize the DPR services, I think it would impact those arbitrators.

THE COURT: Okay.

MS. WANG: Your Honor, if I may?

THE COURT: Yeah.

MS. WANG: The president of DPR, Keith Hunter, informed the parties that Dispute Prevention Resolution would not serve as arbitration administrator. So while it may be possible that certain of the arbitrators on the DPR panel might be on other panels, for example, on a AAA panel or a JAMS panel or just be amenable to a direct retention, they would have to do that without the services that DPR normally provides, the administration services, because DPR has withdrawn.

THE COURT: Yeah, okay. So we looked into some of the other mechanisms like Ms. Wang just pointed out, like AAA, or like JAMS, and it's essentially the cost of doing that because those folks are -- might not be here or -- that's what makes it difficult going forward with DPR not being available to the party?

MS. WANG: My understanding from Ms. Luria is that she hasn't had personal experience using AAA; I have. And just so it's clear, Your Honor, our position -- the arbitration agreement in this case is between Ms. Luria's clients and

Mr. McAllister. It's really because of the nature of Mr. McAllister's allegations in this case that my clients have said it just doesn't make sense for us to proceed in some forum other than where the Snelling defendants are, and so we're sort of the tagalong. Our primary concern is just we want to be where --

THE COURT: Matter's going to be resolved.

MS. WANG: Exactly, exactly -- rather than have two separate matters.

THE COURT: I understood that.

MS. WANG: Thank you, Your Honor.

So on the immediate point about the cost, AAA does have -- AAA tends to charge -- rather than DPR's model of charging a flat fee per hour that includes all of their administration expenses wrapped up into that hourly rate, AAA charges different fees for each different phase. A lot of their -- so you have to pay a fee to get even a panel of potential arbitrators. Their panel does not seem to be as large in Hawaii, or maybe it's just that they don't -- when it's a Hawaii-based arbitration, they don't necessarily limit the arbitrators on their proposed list to Hawaii-based arbitrators. So typically we get arbitrators, mainland-based arbitrators, whose fees then include either some kind of per diem or some kind of, you know, reimbursement of their travel expenses and their expense -- their other types of expenses

while they travel -- come to Honolulu to handle the arbitration.

And in addition, my understanding is that AAA does not have set facilities here in Honolulu, and so while in many cases one of the parties will offer their conference rooms to handle different hearings or different proceedings, at least in front of DPR, Mr. McAllister's position was that he wanted everything held at a neutral site. And so when DPR was the administrator, that could mean DPR's offices.

THE COURT: Right.

MS. WANG: With AAA not having a location, there's a good likelihood that there would be costs incurred to reserve some alternate location.

THE COURT: Okay. And those are the viable options? There's not another one-off, another independent arbitrator here that could be explored?

MS. WANG: You know, I guess we haven't called every possible arbitrator. I'm -- the only arbitrator to be -- the only arbitrator I've ever retained in Hawaii -- in Honolulu or in -- I got to say in Hawaii outside of DPR is actually a Big Island-based arbitrator/mediator, who then again you have the additional travel costs.

THE COURT: Okay. This is more for my own information, but are we going to benefit from any of the work done to date in the arbitration that's taken place so far? Or

was it more some of the motions that you discussed then it didn't really get off the ground and we're not really benefitting from much that's happened to date?

MS. LURIA: Yeah, I don't think that there has been much benefit to date. We had not even been able to commence discovery.

THE COURT: Okay. If -- you mention -- and I can certainly raise it with Mr. McAllister here -- but you mention stipulating back into federal court. Could that also be a remedy on the plaintiff's motion? It should be district court hear all of the above -- I'm not here to decide that motion today -- but should the district court hear all of the above and hear some of the cost arguments and just some of the availability arguments as to other arbitrators, the court could just order that you're coming back to federal court, correct?

MS. LURIA: Correct.

THE COURT: Okay.

MS. LURIA: And the only reason I mentioned the stipulation is that early on in the arbitration, the plaintiff had filed a motion to remand to federal court in lieu of going before --

THE COURT: Right.

MS. LURIA: -- arbitrators. So I thought perhaps, you know, he might still be amenable to that.

THE COURT: I see. Mr. McAllister, do you want to

speak to that today? Because I could certainly -- you know, we could act on some of those things and move.

As I just mentioned in my discussion so far, you know, this is a status conference before me. I'm not here to decide anything this morning. I think the matter was referred down here for this status conference with the -- with your motion because of I think some of the complications that you put in the motion and some of the complications that we're talking about this morning about, you know, the availability and possibility of having a next arbitrator.

What are your thoughts about -- your succinct thoughts about next arbitrators or coming back into court where you originally brought the case?

MR. MCALLISTER: Before I respond to that or any testimony, I need to understand how I can obtain a transcript -- the procedures to obtain a transcript of this -- this status conference. Could you reduce that to writing for me or -- or send me a email on that? Because I need to get the transcript of this conference. How do I do that, Your Honor?

THE COURT: The way to do that is on our website, but I think that we can also take the information that's on our website and make sure it's emailed to you like you just requested. So I can do that.

MR. MCALLISTER: Thank you.

So I'm prepared to respond to any motions, any written motions that the defendants may have.

THE COURT: There's no written motions before me other than yours, no written motion before the court other than yours. And again, mine is just a status conference in light of your motion I think -- I think envisioning some of the complications we're talking about today.

So I don't have a motion, but I think what we have from defendants is an offer to stipulate to come back to court, that is, to declare an impasse on the world of arbitration because of some of the complications, because of essentially not having the availability of anyone on island, with DPR out. You seem to speak to that in your motion as well.

So it would be you originally brought this case in court, probably because you wanted relief in court, and they're saying, okay, they'd be willing to agree with you to come back to court. But that's a -- that's an offer that they'd agree to it and you'd sign a piece of paper and you'd be done and you'd be back in court. And then all the motions you have and discovery disputes that you have, and even -- I think even the prospect of settlement and reasonable settlement offers would all be handled through court and through judges like myself.

So that there's no formal motion, just that offer that's on the table.

MR. MCALLISTER: Okay. So in response to that, I

want to make clear again that any point defendants have the ability, without the court assistance, to make a reasonable offer settlement, close this case, they know that.

In addition, I am prepared to respond to any written stipulation that they have or any written motion that they plan to submit to the Court, and that is my position today, Your Honor.

THE COURT: Okay. I mean, I can tell you when I have attorneys on both sides in my courtroom, we have conversations like this all the time. And what we would do, to your exact point, if we'd have a conversation like this to say -- one side would say, "I would be willing to agree to X," or, "I would be willing to stipulate to X," and the other side said, "So would I," the next thing the court would say is, "Great. The party that offered to that agreement, to that stipulation, put it in writing and send it to the other side."

But, you know, we're not going to waste the time to do that and send out the writing unless we know it's -- the parties are going to sign it.

So I'm only asking you the question. It doesn't mean that you're bound by it. But do you want them to prepare something written as by way of a stipulation that says, you know, essentially we're all done with the arbitration part of this case; we're coming back to court, and that is the matter will no longer be stayed? That too would have to be put before the

judge in the case. But, you know, if parties to a civil suit tend to get -- when both sides are in agreement, those are the ones judges seem to nod along with a little more readily. Does that make sense?

So it will be in writing ultimately.

MR. MCALLISTER: Again, Your Honor, I am prepared to respond to any written offer they have to stipulate anything in this case as well as any motion --

THE COURT: Okay. They'll send you that then. They'll send you -- they'll send you a written stipulation. They'll send it over.

And what I would say is if the parties do reach a stipulation -- that is, they're going to send you it -- they're going to send it to you with their side signed -- it's probably going to be on you once you have a chance to read it and go through it.

If you sign it, that is, we have an agreement, we have two signatures on the piece of paper, then I think you can let -- you can let the court know. You can let us know that there is this agreement so we can take the proper steps, because of course we won't need to worry about appointing an arbitrator at that point because you'd be back in court and we'd have to essentially -- you know, you put some of the docket in your motion -- we'd have to return to that docket and take the next steps, and we'd probably have another scheduling

conference that would be before me that we'd set out dates, like, you know, like a trial date and discovery date and those type of things.

Does that make sense?

MR. MCALLISTER: So, yeah, that makes sense. But also would make sense to me if they are not going to agree to any stipulations that they have that's outside of my motion, to appoint a arbitrator in this case, that's my position. That's my motion on the table.

THE COURT: No, I get it. I understand. Yeah, that's why you and I --

MR. MCALLISTER: -- waste your time, send anything they want. I'm not going to sign it, probably won't even look at it. I got my motion in court. That's what I want.

THE COURT: Okay.

MR. MCALLISTER: Thank you.

THE COURT: You and I are looking at least that part of it similarly because my last question to the other side before I turned to you was this could be relief to your motion, that is, your motion when it's -- again, this is just a status conference before me. I'm not deciding anything here today -- but your actual motion to appoint an arbitrator, that ECF No. 63 that's before Judge Kobayashi, before the district court, that is going to be decided and that is going to be heard.

And it's probably -- it could even be other briefing that comes in in response to your motion. And one of the remedies that could come out of it, one of the things that the judge could do -- and there's a few different things the judge could do -- but one other thing the judge could do is say enough with arbitration, it hasn't worked and it appears that it's going to be a rough road ahead to make it work. So the judge could order the parties back into court.

So I think all that we're talking about --

MR. MCALLISTER: I'm aware of that, yes, sir.

THE COURT: Yeah. I think what we're talking about today is do we want to agree that that's going to happen and just do it because we all know the frustrations that are taking place with arbitration? Or do we want to hear your motion?

I heard you loud and clear this morning that you want this motion heard, so it sounds like that will be the next step, and I know you have a date and a schedule for that.

MR. MCALLISTER: Thank you, Your Honor.

THE COURT: You're welcome. And as it relates to I know -- I know you said the words about the reasonable settlement offers can always be sent outside, and that's true. I think what I've heard today and what I've understood from my review of the file is that there are some communication challenges between the other side communicating with you, and, you know, there's always a story behind those and I don't -- I

don't wish to comment further other than once you come back to court, if you were to come back to court, that's one of the roles that judges, like me -- that's one of the roles that we serve, that we operate as settlement magistrates where, you know, you can make -- they can make offers, we can have settlement conferences, that type of thing.

But right now our court doesn't have jurisdiction over the matter. The matter is stayed. So I can't broker anything or I can't even have a settlement conference here today with your friends on the other side because I don't have jurisdiction to do that at this point. Does that make sense?

So as much as -- what would normally happen with other civil cases that are properly -- that are before the court and not stayed for arbitration or for any other reason, any time we have a hearing, any time we get together for any purpose, we could talk about settlement and we often do in civil cases, and we could have that type of conversation if the matter were returned to court.

I can't have it today. When we break from the phone, not only am I going to break from you on the phone, but I'm going to leave the courtroom, and I can't have further conversation with the other party because we don't have jurisdiction, so I can't have that natural conversation about settlement.

It's probably more -- that's answering a question that you weren't necessarily asking, but I just wanted to make sure you

knew kind of my role as it relates to settlement really turns on whether we're in on the case and the case is in court or not.

Does that make sense?

MR. MCALLISTER: Yeah. Would you respond to my motion for court reporter that it was denied, please?

THE COURT: Is there a motion for a court reporter?

MR. MCALLISTER: Well, I thought --

THE COURT: I will respond to that, yeah. It will be denied and I will respond to that.

MR. MCALLISTER: Thank you.

THE COURT: And you'll -- you'll see that the denial of that, as it comes out, it will be in the docket and it will reflect the exact same things that I explained today about the recording equipment and my court not being -- not having a court reporter and so on. And then we'll also make sure, as we discussed earlier, to get you the information as to how to request a transcript.

MR. MCALLISTER: Excellent. Thank you, Your Honor.

THE COURT: Anything further in light of our conversation from you guys?

MS. LURIA: No, Your Honor.

MS. WANG: No, Your Honor. Thank you.

THE COURT: Okay. Anything further, Mr. McAllister, in light of our conversation today?

MR. MCALLISTER: Yes, yes. I just -- I know you're kind of newly appointed magistrate judge. I just want to congratulate you on your appointment. And I've read your background; it's pretty impressive. I think they got a good man over there.

THE COURT: Okay. Well, thank you for that. I appreciate it.

With that, we're going to make sure we hang up the phone and this matter will be in recess, and you'll have your next hearing before the district court.

Enjoy the rest of your day, everyone.

MR. MCALLISTER: Aloha.

MS. WANG: Thank you, Your Honor.

THE COURTROOM MANAGER: You can hang up now, Mr. McAllister.

(Proceedings concluded at 9:28 A.M.)

TRANSCRIBER'S CERTIFICATE

I, DEBRA READ, court-approved transcriber, United States District Court, District of Hawaii, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

DATED at Honolulu, Hawaii, May 13, 2020.

*/s/ Debra Read*

DEBRA READ, CSR CRR RMR RDR